## ARTICLE 19. WAGES

**Section 1.** Effective the first full pay period following ratification of this Agreement, each employee shall receive a two and one-half percent (2½%) increase in wages retroactive to January 1, 2004. Further, the wage scales, with the appropriate effective dates in Appendix A, shall apply for the life of the Agreement. Each employee who is not at or above the top step of the appropriate labor grade, will move to the next step on the wage scale in the appropriate labor grade on the pay period that ends nearest after the employee's anniversary of employment.

**Section 2.** During the life of this Agreement, employees who are red-circled (an employee whose wage rate is above the top of the wage scale in Appendix A as of the effective date of this Agreement) will receive:

July 1, 2005 - 3%
January 1, 2006 - 3%
July 1, 2006 - 2%

January 1, 2007 - 3%
July 1, 2007 - 3%
January 1, 2008 - 2%

**Section 3.** An employee who is promoted to a higher classification within the bargaining unit will receive a three percent (3%) increase on her hourly wage rate or be placed on the ninety (90) day step, whichever is greater. In the event such wage increase places the employee between steps on the wage scale to which the employee was promoted, then the employee will move to the next higher step on the next anniversary date of employment. Thereafter, the employee will receive steps and general wage increases as provided in this Article.

**Section 4.** The Employer shall place new hires on the wage scale by providing one (1) year of credit for every two (2) years of relevant, recent experience, except in the case of LPNs who shall receive one (1) year of credit for each year of relevant, recent experience. For purposes of movement on the wage scale, experience based credit shall be counted as years of service.

**Section 5.** Employees shall receive one dollar ($1.00) per hour premium pay for all hours worked between Saturday 12:00 a.m. through Monday 12:01 a.m.

**Section 6.** Employees shall receive a fifty cents ($0.50) per hour differential for all hours worked on the evening shift (shifts that begin on or after 3:00 p.m.) and night shifts.

## ARTICLE 20. HEALTH INSURANCE

**Section 1.** Effective October 1, 2004, the Employer shall make contributions to the 1199/SEIU Greater New York Benefit Fund ("Fund") for each employee covered by this Agreement at the rate of 14% of gross payroll of all bargaining unit employees which rate may be adjusted by the Trustees as necessary to maintain the level of benefits currently provided or as improved by the Trustees during the life of the Agreement. Effective April 1, 2005, the Employer contribution shall increase to 17.83% of gross payroll. In no event shall the rate be increased above 21% of gross payroll during the life of this Agreement. "Gross payroll" for the purpose of this provision shall exclude payment for unused sick days, uniforms, transportation allowance and meals.

**Section 2.** The above rates notwithstanding, if the Trustees approve a lower percentage of payroll in another collective bargaining agreement with a different participating Employer in New Jersey at any time during the term of this Agreement, then that percentage shall be offered to the Employer. Further, in the event the definition of "gross" payroll is changed by the Trustees to be more favorable than as defined herein or is more favorable in any other Agreement which participates in this Fund, then such favorable definition shall be incorporated into this Agreement.

**Section 3.** Such contributions shall be paid by the Employer on or before the tenth day of each month and shall cover the previous month's employees covered by this Agreement.

**Section 4.** The payments so made by the Employer shall be used by the 1199/SEIU Greater New York Benefit Fund solely for those fringe benefits set forth in the Trust Agreement heretofore executed and thereafter amended establishing such 1199/SEIU Greater New York Benefit Fund. The parties understand that the 1199/SEIU Greater New York Benefit Fund will be held and managed under the terms and provisions of an Agreement and Declaration of Trust executed in connection with the said Fund.

**Section 5.** The Employer shall furnish to the Union monthly a statement indicating the names of the Employees covered by this Agreement, their social security numbers and the amount of wages paid, or such other report, record or statement as shall supply such information, and agree to make available for inspection to the Trustees of the Fund all payroll records that may be required for the sound and efficient operation of the fund, or which may be required by the insurance companies, if any, insuring the employees.

**Section 6.** Employees will not be required to pay any amount toward the cost of the premiums of the 1199/SEIU Greater New York Benefit Fund. However, if the Trustees increase the percentage of payroll required for participation in the Fund above the amount required of the Employer in Section 1 of this Article, then the Union will advise the Employer regarding the structure and amount of an employee contribution that meets the shortfall in costs of the plan and/or propose a modified benefit subject to the approval of the Trustees.

## ARTICLE 21. RETIREMENT PLAN

**Section 1.** Employees shall be eligible to participate in the Employer's Retirement Plans in accordance with the terms of the Plans. The Employer agrees to a minimum contribution of two percent (2%) each year with respect to profit sharing.

## ARTICLE 22. BEREAVEMENT LEAVE

**Section 1.** Employees who normally work twenty-four (24) hours per week (22 ½ for CNA's) are entitled to up to three (3) consecutive working days of paid time to make arrangement for and/or attend the funeral for the death of a spouse, parent, in-law, child or sibling and one (1) day of paid time in the event of the death of a grandparent or aunt and uncle. The Employer reserves the right to ask for proof of death and family relationship.

## ARTICLE 23. UNIFORM ALLOWANCE

**Section 1.** A uniform allowance in the amount of one hundred twenty dollars ($120.00) per year shall be paid to full-time employees in two (2) installments of sixty dollars ($60.00). Part-time employees, who work more than twenty (20) hours per week, will receive sixty dollars ($60.00) payable in two (2) installments of thirty dollars ($30.00). Uniform allowance shall be paid in June and December. Employees must have six (6) months of service to be eligible for the uniform allowance.

## ARTICLE 24. JURY DUTY

**Section 1.** Employees who normally work twenty-four (24) hours per week (22 ½ for CNA's) and with at least one (1) year of service will receive the difference between jury duty pay and regular pay for up to a maximum of two (2) weeks.

**Section 2.** Employees must submit a copy of the subpoena, jury certificate or court order to their department heard. Employees who are not required to serve on a particular day, or are released prior to the end of the regular work day, must contact their supervisor to determine whether they will be required to return to work. Employees must submit proof of actual jury service to be paid for jury duty.

## ARTICLE 25. VACATIONS

**Section 1.** The Employer shall provide paid vacation time based on the following schedule for full time employees:

| Years | Days |
|---|---|
| 1 - 5 Years | 10 Days |
| 6 - 9 Years | 15 Days |
| 10 - 19 Years | 20 Days |
| 20+ Years | 25 Days |

The employee's completed years of service as of March 31 of each year determine the amount of vacation time earned for that year. Newly hired employees must wait one (1) year to be paid for accrued vacation time.

470770

19

**Section 2.** Part-time employees who work at least twenty-four (24) hours per week (22½ for CNA's) shall receive vacation time based on the above schedule on a pro-rata basis. The pro-rata will be based on straight time hours paid as a percentage of a full-time work year (either 1950 or 2080 hours, whichever is applicable) for the previous calendar quarter.

**Section 3.** Vacation requests must be submitted as follows during the peak vacation times:

    a. No later than May 1 for time requested between Memorial Day and Labor Day each year;

    b. No later than October 15 for time requested between Thanksgiving Day and New Year's Day each year.

**Section 4.** For timely vacation requests during peak times, the Employer shall notify employees whether the request was approved or denied as follows:

    a. No later than May 15 for the peak time between Memorial Day and Labor Day;

    b. No later than November 1 for the peak time between Thanksgiving and New Year's Day.

**Section 5.** The Employer will make every reasonable effort to grant vacation requests subject to resident care and operational needs. If there is a conflict (i.e., more employees select the same period than the Employer can allow to be on vacation at the same time) between employees who have made vacation requests for peak times, such conflict shall be resolved based on seniority among employees within the department and prior time off requests granted.

**Section 6.** During peak vacation times, up to three (3) weeks paid vacation time may be granted based upon operational needs. The parties may agree to waive the three (3) week limit in special circumstances (e.g., trip to country of birth) if operational needs allow and the waiver does not deny another employee's request for vacation during peak times. During non-peak vacation times, employees may take a maximum of five (5) consecutive weeks of vacation per year.

**Section 7.** Employees, who do not request vacation during peak times pursuant to the above procedure, must request their vacations at least two (2) weeks prior to the scheduled period during which they wish to take vacation. The Employer shall respond to such request within one (1) week from the submission of the request. The Administrator or designee may waive time limits stated herein. Such requests shall be awarded on a first come, first served basis, regardless of seniority.

**Section 8.** Employees may buy back vacation time based on hours paid up to a maximum of five (5) days per year.

**Section 9.** Based upon extenuating circumstances, employees with one (1) or more years of continuous service, may be advanced time. Before any advanced time is approved, all vacation, personal, sick, and holiday time must be used. The employee may request up to five (5) days of advanced time. Approval of such requests shall not be unreasonably denied subject to the following:

    a.    Time will not be advanced beyond the calendar year accrual;

    b.    An employee must request advanced time in writing on a Benefit Time Request Form.

**Section 10.** Employees may roll over vacation time to the next year.

**Section 11.** Upon termination of employment, any accrued but unused vacation days will be paid to employees who have provided notice equivalent to the employee's annual vacation accrual. The notice period must be time worked.

**Section 12.** If an employee is on a Family and Medical Leave, the employee shall be required to exhaust all but five (5) days of earned but unused vacation time.

## ARTICLE 26. HOLIDAYS

**Section 1.** Full-time employees who have successfully completed their probationary period shall receive the paid holidays listed. Regular part-time employees who work at least twenty-four (24) hours per week (22½ for CNA's) shall, upon the completion of their probationary period, receive prorated holidays according to a formula of straight time hours paid divided by normal full-time hours. The holidays are:

New Year's Day, Martin Luther King, Jr. Day (effective 1/1/06), Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day

**Section 2.** In order to be eligible for holiday pay, an employee must work the assigned shift before and after the holiday, unless excused. Employees on layoff shall not be eligible for holiday pay, unless they worked the day before the holiday.

**Section 3.** Holiday pay shall be computed on the employee's straight time hourly rate of pay.

**Section 4.** If a holiday occurs on an employee's regularly scheduled day off, the employee shall receive a substitute day off with pay to be scheduled at the mutual convenience of the Employer and the employee provided the employee submits the request for the day off three (3) weeks in advance of the date requested off.

**Section 5.** Employees who work on a holiday shall be paid time and one-half of the base hourly rate, excluding any shift differentials for all hours worked plus a paid compensatory day off. The compensatory day will be scheduled in accordance with Section 4 above.

**Section 6.** When a holiday falls within an employee's scheduled vacation, the benefit time charged to the employee is holiday time rather than vacation time.

**Section 7.** Employees may roll over up to three (3) holidays each year. Holiday time may not be accrued beyond three (3) days per year, any holiday time not used beyond the three (3) days maximum accrual is lost.

# ARTICLE 27. PERSONAL TIME

**Section 1.** Full-time employees who have completed their probationary period shall accrue paid personal days according to the following schedule:

| Years of Service | Paid Personal Days |
|---|---|
| 0 - 4 Years | 6 Personal Days |
| 5 - 10 Years | 7 Personal Days |
| 11+ Years | 8 Personal Days |

**Section 2.** Part-time employees who work at least twenty-four (24) hours per week (22 ½ for CNA's) and who have completed their probationary period shall accrue paid personal days pro-rated according to the above schedule based on straight time hours paid.

**Section 3.** Personal time is provided to employees to be used for holidays not recognized by the Employer as legal holidays or for other personal reasons.

**Section 4.** Employees must request personal time two (2) weeks in advance of the date requested by submitting a Benefit Time Off Request Form to the Department Head. Approval for personal time will be granted based upon operational needs. Personal leave days may be granted on less than two (2) weeks' advance notice for unavoidable emergencies, including taking care of an ill child or parent, if there has been no pattern of abuse.

**Section 5.** Employees may roll over up to eight (8) personal days each year. Any accrued but unused time at the end of the (calendar or anniversary) year beyond the eight (8) day maximum shall be lost.

**Section 6.** Personal time shall be paid at the employee's regular hourly rate.

## ARTICLE 28. SICK TIME

**Section 1.** Full-time employees who have completed the probationary period shall accrue eight (8) paid sick days per year. Part-time employees who work at least twenty-four (24) hours per week (22½ for CNA's) will accrue pro-rated sick leave based on straight time hours paid.

**Section 2.** Sick time will be paid at the base hourly rate of pay.

**Section 3.** In order to qualify for sick time, employees must call in two (2) hours prior to the beginning of the shift. The Employer may request an employee to provide proper certification of illness if the employee has been ill three (3) consecutive days or longer or if the Employer has a reasonable basis to believe that sick leave is being abused.

**Section 4.** Employees must sell back accrued but unused sick time at the end of each calendar year.

**Section 5.** For employees who have completed five (5) or more years of service, upon termination of employment, accrued but unused sick days will be paid to employees who have provided notice equal to their vacation accrual. The notice period must be time worked.

## ARTICLE 29. 1199 TRAINING AND EDUCATION FUND

**Section 1.** Effective January 1, 2008, the Employer agrees to contriubte ½% of gross monthly payroll to the SEIU 1199 NJHCU Training and Education Fund. The contributions are due on or before the 10th day of the month following the period for which contributions are due or before such other date as the Trustees may hereafter determine.

**Section 2.** If the Employer becomes delinquent with payments, as hereinabove provided, it shall be required to post bond to secure future payments. Resort to a remedy under this Agreement or under the Agreements and Declarations of Trusts for the collection of contributions due to the Funds shall not be deemed a waiver of the rights to resort to any other remedy provided therein or by law. Resort to one remedy at one time shall not be deemed a waiver of the right to resort to other remedies at a prior, the same or at a subsequent time.

**Section 3.** The Union and any authorized agents or representatives of the Funds shall have the right at all reasonable times during business hours to enter upon the premises of the Employer and to examine, audit and copy such of the books and records of the Employer, and to permit the Union and the Funds to determine whether the Employer is making full payments of the amounts required by the Agreement. When an Employer is found to have a deficiency in the audit in the amount of ten percent (10%) or more of the total contribution for the period of such audit, the Employer shall immediately pay the cost of such audit as well as the additional contributions owed to the Union and the Fund.

## ARTICLE 30. POLITICAL FUND

**Section 1.** Effective Janaury 1, 2008, the Employer shall participate in the NJ Health Care Workers Alliance for Quality Care in Long Term Care and contribute ½% of gross payroll of the Employees payable to:

**NJ Health Care Workers Alliance for Quality Care in Long Term Care**
**555 US Route One South**
**Iselin, NJ 08830**

## ARTICLE 31. BARGAINING UNIT WORK

**Section 1.** In the event the Employer decides to subcontract work which is normally performed by bargaining unit employees, the Employer shall provide the Union with at least thirty (30) calendar days notice prior to implementation of any plan. The parties shall meet to discuss the reasons for the subcontracting and any alternatives that the Union may propose. If the Employer proceeds with the decision to subcontract, then the Employer shall:

a. Place displaced employees in other bargaining unit position for which they are qualified without any diminution of wages or benefits; or,

b. Make every reasonable effort to require that the subcontractor hire current employees with the same terms and conditions of employment; or, in the event that (a) or (b) do not apply,

470770  25

c.  Pay a severance package of two (2) weeks of pay for each year of service, with a minimum of eight (8) weeks paid, to any displaced employee. The employee shall continue to be covered by the health insurance benefits at the Employer's expense during the period of severance payment. Further, such employees shall receive unpaid vacation, holidays, personal days, and sick days consistent with this Agreement.

## ARTICLE 32. SUBSTANCE ABUSE POLICY

**Section 1.** The Employer may require blood, urine or breath samples from any employee who the Employer reasonably suspects to be under the influence of alcohol or illegal drugs while at work or otherwise on the Employer's premises. Any employee refusing to provide a sample when requested will be considered to be insubordinate and will be terminated.

**Section 2.** Employees who test positive for illegal or non-prescribed drugs or alcohol during reasonable suspicion testing, or during a return to work physical, may, depending upon the circumstances, be terminated or given an unpaid leave of absence of up to 12 weeks to undergo rehabilitation, counseling and treatment. At the conclusion of the leave, the employee's status will be reviewed by the Employer. If satisfactory evidence of rehabilitation is presented, the employee may be returned to work, subject to periodic monitoring. If further rehabilitation is required, the Employer may grant an extension of the unpaid leave. Employees who have not made a bona-fide attempt to undergo rehabilitation or who have failed to complete the rehabilitation program will be terminated.

**Section 3.** Testing information and results will not be disclosed to anyone within the Employer who does not have a legal basis need to know.

## ARTICLE 33. CHECK OFF AUTHORIZATION

**Section 1.** Upon receipt of a written authorization from an Employee, The Employer shall, pursuant to such authorization, deduct from the wages due said Employee each pay period and remit to the Union regular bi-weekly dues and initiation fee, as fixed by the Union. The initiation fee shall be paid in bi-weekly installments beginning the payroll period following the completion of the probationary period.

**Section 2.** Employees who do not sign written authorizations for deductions must adhere to the same procedure by making payments directly to the Union.

**Section 3.** The Employer shall not be obliged to make dues deductions from an Employee, who during any dues period involved, shall have failed to receive sufficient wages equal the dues deduction.

**Section 4.** Each month, The Employer shall remit to the Union, at 555 Route 1 South, Iselin, New Jersey, all deductions for dues and initiation fees from the wages of Employees for the preceding month, together with a list of all Employees from whom dues and/or initiation fees have been deducted.

**Section 5.** The Employer agrees to furnish the Union each month with the names of current Employees, their social security numbers, total pay for the pay period, dues deducted for the pay period and date of termination, resignation, leave of absence or retirement, if any; along with the names of newly hired Employees, their addresses, phone numbers, social security numbers, classification of work, department, date of hire, rate of pay, dues deducted for the pay period, shift.

**Section 6.** The Union shall indemnify and hold the Employer harmless against any and all claims, demands, suits, or other forms of liability that may arise out of, or by reason of any action taken or not taken by The Employer for the purpose of complying with this Article.

**Section 7.** An Employee may consent in writing to the authorization of the deduction of a political action fund contribution from his her wages and to the designation of the Union as the recipient thereof. Such consent shall be in a form acceptable to The Employer and shall bear the signature of the Employee. An Employee may withdraw his/her political action fund authorization by giving at least sixty (60) days notice in writing to The Employer. The Employer shall deduct such political action fund contribution from the pay of the Employees who request such deduction and shall transmit deductions to the Treasurer of the Union together with a list of Employees whose political action funds are transmitted at the time dues deduction are transmitted.

## ARTICLE 34. COMPLETE SETTLEMENT

**Section 1.** This Agreement contains all the terms and conditions of employment between the Employer and the members of the bargaining unit represented by the Union. Any previous or past practice not expressly incorporated in this Agreement shall be waived and shall otherwise be void and a nullity unless in writing and signed by the parties hereto. No Agreement is binding between the parties unless in writing and signed by both parties.

## ARTICLE 35. TERM OF AGREEMENT

**Section 1.** This Agreement shall be effective August 19, 2004 and shall continue in full force until June 30, 2008. Either party desiring changes or amendments of this Agreement prior to the expiration of same shall give the other party notice in writing not less than sixty (60)days immediately prior to the expiration of this Agreement or any extension thereof specifying that changes or amendments are desired; otherwise the Agreement renews itself for yearly periods without change.

IN WITNESS WHEREOF, the parties have hereunto affixed their signatures this _10th day_ of _September 2004_

**FOR THE EMPLOYER**             **FOR THE UNION**

By: _[signature] Deborah B___ CEO       By: _[signature]___
                                                      President

                                             _Ramon Peralta_

                                             _Antonia Arriaga_

                                             _Dorothy [illegible]_

                                             _Eunice Grant_

                                             _Victoria J. Turay_

                                             _Lue Earl Rolley_

                                             _Sonia Joseph_

                                             _Rosa Emmanuel_

                                             _[illegible] Ford_

                                             _Michelle [illegible]_

                                             _Marjorie Salaz_

                                             _Alma Cole_

                                             _Yassin John_

## Appendix A -

### Memorandum Of Agreement
### Between
### SEIU Local 1199NJ (the "Union")
### And
### Central New Jersey Jewish Home for the Aged (the "Employer")
### RE: Past Practices

The following past practices shall continue in full force and effect and are incorporated in the collective bargaining agreement by reference:

1. Free Parking
2. Cold Meals (e.g. sandwiches and salad)
2. Cafeteria
4. Discretionary holiday turkey
5. Vending machine in cafeteria
6. Pay phones (not to be used during work time)
7. Discretionary holiday bonus
8. Thursday payday
9. I.D. Badges - Free for 1st badge and $10.00 for replacement
10. Locker room
11. Reimbursement for education until December 31, 2007
12. One smoking area
13. Juice machine

FOR THE EMPLOYER:

_[signature]_ CEO

Date: 9/10/04

FOR THE UNION:

_[signature]_

Date: 9/10/04

## Appendix B - Wage Scale

**Current**

| Labor Grade | 90 Day | 1Yr | 2 Yr | 3 Yr | | 5 Yr |
|---|---|---|---|---|---|---|
| U-1 | $ 7.80 | $ 8.03 | $ 8.28 | $ 8.52 | | |
| U-2 | $ 9.25 | $ 9.53 | $ 9.81 | $ 10.11 | | |
| U-3 | $ 10.00 | $ 10.30 | $ 10.61 | $ 10.93 | | |
| LPN | $ 20.00 | | $ - | $ - | | $23.00 |

**Effective 1/1/04 2.5%**

| Labor Grade | 90 Day | 1Yr | 2 Yr | 3 Yr | | 5 Yr |
|---|---|---|---|---|---|---|
| U-1 | $ 8.00 | $ 8.23 | $ 8.48 | $ 8.74 | | |
| U-2 | $ 9.48 | $ 9.77 | $ 10.06 | $ 10.36 | | |
| U-3 | $ 10.25 | $ 10.56 | $ 10.87 | $ 11.20 | | |
| LPN | $ 20.50 | $ - | $ - | $ - | | $23.58 |

**Effective 7/1/05 3.00%**                                    **Effective 1/01/06**

| Labor Grade | 90 Day | 1Yr | 2 Yr | 3 Yr | 4 Yr | 5 Yr |
|---|---|---|---|---|---|---|
| U-1 | $ 8.23 | $ 8.48 | $ 8.74 | $ 9.00 | 9.27 | |
| U-2 | $ 9.77 | $ 10.06 | $ 10.36 | $ 10.67 | $ 10.99 | |
| U-3 | $ 10.56 | $ 10.87 | $ 11.20 | $ 11.54 | $ 11.88 | |
| LPN | $ 21.12 | $ - | $ - | $ - | $ - | $ 24.28 |
| LPN eff 1/1/06 | $ 21.75 | | | | | $ 25.01 |

**Effective 7/1/06 2.00%**                                    **Effective 1/01/07**

| Labor Grade | 90 Day | 1Yr | 2 Yr | 3 Yr | 4 Yr | 5 Yr |
|---|---|---|---|---|---|---|
| U-1 | $ 8.40 | $ 8.65 | $ 8.91 | $ 9.18 | $ 9.45 | $ 9.74 |
| U-2 | $ 9.96 | $ 10.26 | $ 10.57 | $ 10.88 | $ 11.21 | $ 11.55 |
| U-3 | $ 10.77 | $ 11.09 | $ 11.42 | $ 11.77 | $ 12.12 | $ 12.48 |
| LPN | $ 22.18 | $ - | $ - | $ - | $ - | $ 25.51 |
| LPN eff 1/1/07 | $ 22.85 | | | | | $ 26.28 |

**Effective 7/1/07 3.00%**                                    **Effective 1/01/08**

| Labor Grade | 90 Day | 1Yr | 2 Yr | 3 Yr | 4 Yr | 5 Yr | 6 Yr |
|---|---|---|---|---|---|---|---|
| U-1 | $ 8.65 | $ 8.91 | $ 9.18 | $ 9.45 | 9.74 | $ 10.03 | $ 10.23 |
| U-2 | $ 10.26 | $ 10.57 | $ 10.88 | $ 11.21 | $ 11.55 | $ 11.89 | $ 12.13 |
| U-3 | $ 11.09 | $ 11.42 | $ 11.77 | $ 12.12 | $ 12.48 | $ 12.86 | $ 13.12 |
| LPN | $ 22.85 | $ - | $ - | $ - | $ - | $ 27.06 | |
| LPN eff 1/1/08 | $ 23.31 | | | | | $ 27.61 | |

U-1: Environmental Services Aide, Dietary Aide, Laundry Aide, Dietary/Utility
U-2: CNA, ~~Activities Aide~~ REHAB AIDE    MSB 9/10/04
U-3: Unit Clerk, Central Supply Clerk, Purchasing Clerk, Recreational Aides, Cooks, Maintenance, Beautician/Barber, ~~Rehab Aide~~
MSB 9/10/04

# Weingarten Rights

(If called to a meeting with management, read the following or present this page to management when the meeting begins.)

*"If this discussion could in any way lead to my being disciplined or terminated, or affect my personal working conditions, I respectfully request that my Union delegate be present at this meeting. Until my representative arrives, I choose not to participate in this discussion."*